## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **Civil Action No. 4:18-CV-164** |
| | : | |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY; DANNY SHAHA, in his** | : | |
| **individual capacity and official capacity** | : | **Filed Via ECF** |
| **as Senior Director of the Office of Student** | : | |
| **Conduct; KAREN FELDBAUM, in her** | : | |
| **individual and official capacity as** | : | |
| **Associate Director of the Office of** | : | |
| **Student Conduct; SPENCER PETERS,** | : | |
| **Office of Student Conduct Investigator** | : | |
| | : | |
| *Defendants* | : | |

## PLAINTIFF'S MEMORANDUM IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1. <u>Introduction</u>

The defendants, the Pennsylvania State University ("University" or "Penn State"), Danny Shaha, then Senior Director of the Office of Student Conduct, Karen Feldbaum, then Associate Director of the Office of Student Conduct, and Spencer Peters, Office of Student Conduct Investigator, have moved to dismiss plaintiff, John Doe's §1983 Due Process civil rights lawsuit seeking damages and expungement of a Title IX sexual assault code of conduct violation disciplinary history and contact. Doe files this brief in opposition to their motion.

In his pleading, Doe alleges that the sanction and the attendant disciplinary record were the product of a constitutionally flawed disciplinary process and policy, Penn State's newly minted "Investigative Model" , which deprived him of the most basic due process protections including the right to a hearing and to be heard, to testify in person, to call witnesses on his own behalf, to cross-examine his accuser and adverse witnesses, to the meaningful assistance of an attorney, and to a fair and unbiased process and tribunal.[1]

The defendants contend that they are entitled to a F.R.Civ.P. Rule 12(b)(1) dismissal because there is "no current justiciable controversy" and the plaintiff therefore "lacks standing with regard to his demand for injunctive and declaratory relief."[2] Specifically, the defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's equitable relief demand because there is no blemish to his *academic* record as he has served his suspension.  Although the Defendants concede that their actions created a disciplinary record, they claim that this court lacks the authority to order them to expunge the fact of his *disciplinary* contact.[3]

The Defendants are mistaken in all respects and their motion should be denied.

---

[1] The disciplinary policy at issue in this case is the same one this Court skeptically scrutinized in *Doe v. The Pennsylvania State University (Doe I)*[1] and which led to the prompt issuance of an emergency temporary restraining order enjoining the University from enforcing disciplinary sanctions against another accused student finding that he was "reasonably likely to succeed on the merits" of his Due Process civil claim.

[2] Defs. Br. In Supp. Of Their Mot. To Dismiss Pl's Complt. at ii.

[3] *Id.* at 12.

2.   <u>Operative Facts</u>

During the early morning hours on August 9, 2014, Penn State University students John Doe and Jane Roe engaged in sexual acts in Doe's dorm room after a night of drinking.[4]   Doe contends the sexual acts were consensual and Roe says they were not.[5]   Roe went to the hospital the next day claiming that she had lacerated her vagina.[6]   She initially denied that she was sexually assaulted and later refused to provide the police (who interviewed her at the hospital) or her treatment providers with the name of the person she claimed assaulted her.[7]   She also refused to file a police report.[8]   On September 15, 2014, Peters placed the case on "inactive" status after commencing a rape investigation targeting Mr. Doe and after unsuccessfully trying to engage Ms. Roe in the investigative process.[9]

Ten months later in May of 2015, Roe initiated criminal and university code of conduct complaints.[10]   Spencer Peters, who had left the University Police months earlier to become an Office of Student Conduct ("OSC") investigator, coordinated in his new role with University Police Detective Litzinger to jointly receive Roe's

---

[4] Complaint at ¶41.
[5] *Id.* at ¶¶42-43.
[6] *Id.* at ¶45.
[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶45
[10] *Id.* at ¶46

complaint and interview her.[11]  OSC assigned Peters to conduct the University's investigation of Doe despite his earlier police detective role. [12]

Prior to this investigation, Penn State's Office of Student Conduct had long used an adjudicatory disciplinary process that provided for, among other protections, the right to an in person hearing, the right to call witnesses, the right to confront and cross examine witnesses, the right to a clear and convincing evidence standard, and the right to record the proceeding.[13]  With respect to Mr. Doe, however, OSC's Senior Director Shaha chose instead to adjudicate Roe's sexual misconduct allegation by using Penn State's inaugural "Investigative Model," a Title IX policy it enacted several months after the alleged misconduct occurred.[14]  This inaugural Title IX disciplinary regime, which the Senior Director chose to use over the traditional "hearing" due process model, does not provide the accused with a hearing, does not permit the accused to call witnesses or cross-examine his accuser or other adverse witnesses, and does not permit the fact-finder, known as the "Title IX Decision Panel," to meaningfully assess credibility by hearing the testimony of witnesses and observing their demeanor while testifying.[15]

---

[11] *Id.* at ¶¶*46-47.*
[12] *Id.* at ¶51
[13] *Id.* at ¶15
[14] *Id.* at ¶¶17, 19.
[15] *Id.* at ¶¶15-16, 20, 31-32.

As the "Title IX Investigator", Peters would receive "written statements, witness names, and other information related to the allegation" and "meet and obtain information from possible witnesses."[16] Following this "initial investigative stage," investigator Peters produced "an Investigative Packet" which he gave to a Title IX Panel advising them that his investigation "reasonably supported" a conclusion that Doe violated the University's Code of Conduct by sexually assaulting Roe.[17]

Office of Student Conduct ("OSC") Associate Director Feldbaum provided the Panel with various explanatory materials including a document entitled "Considerations in a Sexual Misconduct Hearing" which contained a "Considerations on Behalf of the Alleged Victim" section instructing the Panel that only 2% of sexual assault accusations are false.[18] The Panel was then tasked with determining witness credibility, responsibility, and sanctions using nothing more than Peters' Packet in conjunction with inflammatory and biased "instructive" material provided to them by OSC Associate Director Feldbaum.[19]

Relying on Investigator Peters' investigation, his finding that it "reasonably supported" a policy violation, and using OSC's only 2% of sexual assault allegations are false instruction, the Panel found that Peters' Investigative Packet demonstrated

---

[16] *Id.* at ¶¶21-22.
[17] *Id.* at ¶¶57-59.
[18] *Id.* at ¶¶33-34, 59.
[19] *Id.* at ¶¶20-34, 58-60, 62.

by a preponderance of evidence that Doe raped Roe, thereby violating University policy.[20]  On February 3, 2016, Penn State suspended Doe for two semesters and imposed additional sanctions.[21]  Although Doe was not permitted to appear before the Panel, and the Panel conducted a paper-only review, it nonetheless concluded that Doe had "fail[ed] to provide any information about how he knew that the Complainant consented to sex after she had clearly stated that she had doubts about having intercourse."[22]  Essentially, the Panel required Doe to prove he had consent even though the burden of proof is supposed to rest on the University.  Doe could have directly answered this question had the University permitted him to appear in person and had the Panel posed the question to him prior to their adjudication.[23]

3.    Argument[24]

A.    **The Plaintiff Has Plausibly Stated a Claim that the Defendants Violated His Clearly Established Right to Procedural Due Process Requiring a Denial of the Defendants' 12(b)(6) Motion.**

The Defendants misconstrue a prior ruling of this court,[25] and constitutional jurisprudence generally, by arguing that Doe's due process claim is subject to F.R.Civ.P. Rule 12(b)(6) dismissal because he failed to plead that the defendants

---

[20] *Id.* at ¶¶59-61.
[21] *Id.* at ¶¶60-61, 67-68.
[22] *Id.* at ¶62.
[23] *Id.*
[24] The plaintiff will not recite 12(b)(6) boilerplate law given the Court's familiarity with the standard.
[25] *Doe v. Pa. State Univ.*, 276 F.Supp.3d 300 (M.D. Pa. 2017).

deviated from their written procedures and policies.[26]  Their argument suggests, illogically, that due process is violated only through policy deviation; never mind if the policy itself is unconstitutional.  Finally, the defendants request dismissal of individual official capacity claims[27] and argue that they are entitled to qualified immunity.

(i)    The Right to Procedural Due Process

It is beyond cavil that a year-long suspension clearly implicates a protected property interest[28] and a sexual assault disciplinary record may "impugn [a student's] reputation and integrity, thus implicating a protected liberty interest."[29] Accordingly, a student at a state-funded school is entitled to procedural due process in a disciplinary action against him.[30]  The "requirement of due process is a requirement of fundamental fairness" such that the level of due process required varies with the nature of interests affected and the circumstances surrounding the deprivation.[31]  At a minimum, a university must provide "notice and an opportunity for hearing

[26] Defs. Br. In Supp. Of Their Mot. To Dismiss Pl's Complt. at 22.

[27] The individual defendants are being sued in their individual capacity only and the plaintiff stipulates to the dismissal of claims against defendants Shaha and Feldbaum in their official capacity.

[28] *Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729 (1975)(holding that due process required notice and opportunity to present his side of the story for a ten-day suspension).

[29] *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir.2017)(*citing Doe v. Cummins*, 662 Fed.Appx 437, 445 (6th Cir. 2016)). *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (holding that where "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of due process must be satisfied).

[30] *Furey v. Temple Univ*, et al., 884 F.Supp.2d 223, 246 (E.D. Pa. 2012).

[31] *Id.*

appropriate to the nature of the case."[32]   The U.S. Supreme Court has stated that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.[33] When credibility is at issue in a more serious charge, "the importance of a fair tribunal, where the testimony of all of the witnesses is examined for truthfulness, is heightened."[34]

It is long-settled that the personal appearance of witnesses before the fact-finder is indispensable to the assessment of their credibility:

> Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system.  For only in such a trial can the trier of the facts (trial judge or jury) observe the witnesses' demeanor; and that demeanor- or deposition- is recognized as an important clue to witness' credibility.[35]

Thus, in the procedural due process context, *Goldberg v. Kelley*,[36] held that an oral hearing was required prior to suspension of welfare benefits.[37]  Other Supreme Court cases have so held,[38] and *Goss v. Lopez*,[39] the seminal case about due process in student disciplinary proceedings, strongly implied that the "opportunity to be

---

[32] *Id.(citing Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729 (1975)).

[33] Goss v. Lopez, 419 U.S. 565, 583, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975).

[34] *Furey v. Temple,* et al., 884 F.Supp.2d 223, 254 (E.D. Pa. 2012).

[35] *Zig Zag Spring Co v. Comfort Spring Corp.*, 89 F. Supp. 410, 413 (D.N.J. 1950).

[36] 397 U.S. 254 (1970)

[37] *Id.* at 269.

[38]   *See, e.g., Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) (holding that due process required that a municipal utility afford "an opportunity for a meeting with a responsible employee empowered to resolve the dispute" before terminating service for non-payment of bills, *id.* at 18).

[39] 419 U.S. 565 (1976)

heard" is to be read literally as the opportunity to respond orally in a face-to-face encounter with the decisionmaker.[40]

The Court of Appeals for the District of Columbia undertook a detailed examination of a "paper-only" due process claim in *Gray Panthers v. Schweiker*.[41] In that case the Circuit Court reviewed the constitutionality of a procedure whereby challenges to denied Medicare claims in an amount less than $100 were reviewed purely on the basis of written submissions, "with no further review, and ... [no] opportunity to present one's case personally to the decisionmaker."[42]  In holding that the procedure failed to comport with due process requirements, the Circuit Court examined "the value of oral hearings."[43]  The Court observed that:

> [t]here seem to be at least three societal goals served by an oral "kind of hearing"[:]  the desire for accuracy, the need for accountability, and the necessity for a decision-making procedure which is perceived as "fair" by the citizens.  Most often mentioned in the courts is the notion that an oral hearing provides a way to ensure accuracy when facts are in dispute, *especially if credibility is an issue*.  Justice Frankfurter believed that "no better instrument has been devised for arriving at truth" than the notice and hearing requirement.  Even if credibility is not likely to be directly in issue, personal, oral hearings are an effective way to eliminate misunderstandings and focus issues.  Ambiguities which are not readily apparent on the face of a document can be disclosed and clarified with a few moments of oral exchange between the individual and the decisionmaker.[44]

---

[40] *Id.* at 582.
[41] 652 F.2d 146 (1980).
[42] *Id.* at 149.
[43] *Id.* at 159-161.
[44] *Id.* at 161-162 (emphasis added, citations omitted).

In *Furey v. Temple University*,[45] the court held that due process required that the plaintiff be permitted to cross-examine witnesses. The court observed that the purpose of cross examination is to permit the accused to challenge the credibility and truthfulness of witnesses, and particularly where facts are in dispute and witness credibility is important, cross-examination of witnesses is "an important safeguard."[46]   Similarly in *Doe v. Cincinnati*, the 6th Circuit observed that few procedures safeguard "accuracy" better than cross-examination and adversarial questioning.[47]  When needing to determine the credibility between competing narratives, "cross examination has always been considered a most effective way to ascertain the truth."[48]  Accordingly, cross examination is "essential to due process in a case that turns on credibility because it guarantees that the trier of fact makes this evaluation on both sides" and ensures the "hearing's result is most reliable."[49] None of the cases cited by the Defendants in support of their procedural due process sufficiency argument is a comparable "paper only" review resulting in an effectively year-long suspension.

Allegations of alcohol-fueled sexual misconduct at a university inevitably generate grave credibility questions.  Plaintiff had a right under the Due Process

---

[45] *Furey v. Temple University*, 884 F. Supp. 2d 223 (E.D. Pa. 2012).
[46] *Id.* at *252.*
[47] *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401 (6th Cir.2017)
[48] *Id.*
[49] *Id.* at *402.*

Clause to have those questions of credibility, on which his fate depended, answered by the personal appearance of witnesses and to subject them to questioning before the fact finder.

"[A] fair and impartial tribunal and trial is a necessary component of procedural due process."[50] There is no question that a biased decision-maker renders a disciplinary process unconstitutional.[51]  In his Complaint, Doe stated that he was denied a fair and impartial investigation and adjudication process.  By its terms, the policy delegated a "neutral fact-finding" role to Peters. The policy made him, in practice, an information funnel:  he decided what to include or exclude from the Packet and how to characterize the information he had received. The policy also delegated prosecutorial and adjudicative roles to Peters who was tasked with telling the Panel that his in-person witness interviews and the investigation as a whole led him to conclude that the Packet reasonably supported his conclusion that Doe sexually assaulted Roe along with the all-but-dispositive implication that Roe was credible and Doe was not.

Layered on top of Peters' findings, defendant Feldbaum provided the panel with highly inflammatory instructive material which, among other things, instructed that only 2% of sexual assault allegations are false.  The defendants never apprised Doe

---

[50] *Furey* at 395.
[51] *See Withrow v. Larkin*, 421 U.S. 35, 46–47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Batagiannis v. W. Lafayette Cmty. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir.2006).

of the inclusion of this instruction or the other materials thereby denying him an opportunity to respond.[52]   Against this backdrop, the new Policy lowered the University's burden of proof to a preponderance of evidence –a toxic due process brew of *de minimus* due process protections coupled with a low burden of proof.[53] It's hard to imagine how a Panel would not find that the University met this burden.

John Doe has plausibly pled that the defendants violated his right to procedural due process entitling him to monetary damages and equitable relief in the form of an injunction ordering the University to expunge the record and the fact of the disciplinary contact because John Doe's disciplinary record impugns his reputation and will have long-lasting impacts on future educational and career endeavors.[54]

(ii)   Qualified Immunity

Defendants assert qualified immunity as an independent basis for dismissal of the suit.  As a preliminary matter, qualified immunity does not apply to Doe's equitable relief claim.[55]  With regard to his damage claim, the Court must determine whether

---

[52] Complaint at ¶¶80, 82-84.
[53] See *Furey*, 884 F.Supp. 2d 223, 256 (E.D. Pa. 2012) (finding that although individually issues may not have constituted due process violation, the issues in combination affected the fairness of the disciplinary process as a whole).
[54] *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir.2017) (finding suspensions indicate protected property interest and allegations of sexual assault may impugn a student's reputation and implicate a protected liberty interest).
[55] *Morse v. Frederick*, 551 U.S. 393, 432-3, 127 S.Ct. 2618 (2007) (*citing Wood v. Strickland*, 420 U.S. 308, 314, n 6, 95 S.Ct. 992 (1975))

Doe alleged the violation of a constitutional right and whether that right was "clearly established" at the time of his February 3, 2016, suspension.[56] "

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[57]  Our Circuit has recognized that restraint may be required before making the determination at the pleadings stage since it is necessary to develop the factual record.[58]

As the discussion in section 3.A., supra, illustrates, clearly established law sets forth that at a bare minimum, procedural due process required the right to a fair, impartial investigation and adjudicatory process which, in a serious, credibility dependent case, includes the right to an in person hearing and some form of cross examination. John Doe's Complaint delineates numerous ways in which the Defendants violated Doe's constitutional rights.[59]  Accordingly, the defendants are not immune from Doe's damage claims.

---

[56] *Pearson v. Callahan*, 555 U.S. 223, 223-24 (2009).

[57] *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083, 563 U.S. 731, 741 (2011)

[58]  *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009) ("it is generally unwise to venture into a qualified immunity analysis at the pleadings stage as it is necessary to develop the factual record in the vast majority of cases");

[59] Complaint at ¶¶69-88.

## B. **This Court Should Deny Defendants' 12(b)(1) Motion to Dismiss Plaintiff's Claim for Equitable and Declaratory Relief Because He Has Alleged An Active Case or Controversy and Continues to Suffer Actionable Harm.**[60]

The defendants argue that the plaintiff lacks standing on his equitable relief claims because: the "alleged deprivation", the suspension, ran its course.[61]  With respect to the harm caused by the inclusion of the sexual assault adjudication in his disciplinary record, the defendants argue that there is no justiciable equitable relief claim given because: "his transcript will bear no notation regarding the student conduct proceedings or outcome".[62]  They argue that Doe's request that the Court order the expungement of his disciplinary file, including the fact of the contact itself, would offer no actionable relief to him because, if asked, the University would respond "yes, Plaintiff was subject to conduct proceedings at the University" and that "no relief or remedy in this Court can change that."[63]

The defendants apparently misunderstand that John Doe is appealing to the Court's equitable power to expunge his *disciplinary* file rather than his academic record or transcript.   The defendants seem to concede, as they must, that the

---

[60] The plaintiff declines to boilerplate 12(b)(1) as the Court is well aware of the relevant standards.

[61]  Defendant Karen Feldbaum informed John Doe by April 9, 2018, the same day as the defendants filed their brief in support of the motion to dismiss, that he had fulfilled the terms of his suspension and would be readmitted to the University.  Exhibit A.  Accordingly, the defendants have mooted out plaintiff's claim for equitable relief insofar as it relates to the suspension.

[62] Defs. Br. In Supp. Of Their Mot. To Dismiss Pl's Complt. at 12.

[63] *Id.*

disciplinary record prejudices the plaintiff now and will in the future. They argue however, that their intention to reveal the fact of the contact, if asked, renders the prejudice too insignificant to qualify for equitable relief and beyond the Court's power to remedy.

It defies common sense to argue that a record of a sexual assault guilty adjudication is not sufficiently more prejudicial than the University advising a third party that he was "subject to conduct proceedings" to warrant standing to request equitable relief. Further, Penn State's disciplinary record policy states that a disciplinary record is created only when a student is "charged by the University and accept[s] responsibility' or if after a hearing the student is found "responsible for charges."[64]. Moreover, if the disciplinary record is expunged, consistent with its policy, Penn State would be expected to respond that plaintiff has no disciplinary record. Regardless of this policy, the plaintiff believes that the Court does have the equitable power to prohibit the defendants from prospectively sharing that he has been subject to a conduct proceeding.

John Doe has plausibly pled that the defendants' due process violations caused him an injury in fact entitling him to expungement of his disciplinary file; including

---

[64] See *Student Conduct FAQs, Will I have a conduct record if I am involved in an incident of misconduct.* https://studentaffairs.psu.edu/safety-conduct/student-conduct/student-conduct-faqs

the fact of the disciplinary contact.   Accordingly, the Court should deny the defendants' 12(b)(1) dismissal motion.

## IV. Conclusion

For the reasons expressed above, the Court should dismiss the Defendants' motion to dismiss should be denied.

Respectfully Submitted,

April 30, 2018

s/ Andrew Shubin
Andrew Shubin
ID #63263
333 South Allen Street
State College, PA 16801
(814) 867-3115
(814) 867-8811 fax
shubin@statecollegelaw.com

*Attorney for Plaintiff,*
*John Doe*

# **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the word-count limit set forth in Local Rule 7.8(b)(2) in that it contains 3,914 words, as determined by the word count feature of the word-processing system used to prepare the brief.

Dated: April 30, 2018

s/ Andrew Shubin
Andrew Shubin
ID #63263
333 South Allen Street
State College, PA 16801
(814) 867-3115
(814) 867-8811 fax
shubin@statecollegelaw.com

*Attorney for Plaintiff,*
*John Doe*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion To Dismiss to be served upon the following via the Court's ECF system:

James A. Keller, Esquire
Saul Ewing Arnstein & Lehr LLP
1500 Market Street
Philadelphia, PA 19102
(215) 972-1964
james.keller@saul.com
*Attorney for Defendants*

Dated: April 30, 2018                   s/ Andrew Shubin
                                        Andrew Shubin
                                        ID #63263
                                        333 South Allen Street
                                        State College, PA 16801
                                        (814) 867-3115
                                        (814) 867-8811 fax
                                        shubin@statecollegelaw.com

                                        *Attorney for Plaintiff,*
                                        *John Doe*